IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39061

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Opinion No. 56S** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  December 19, 2012** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ROBERT CASSIDY HANSEN,** | ) | **SUBSTITUTE OPINION** |
| | ) | **THE COURT'S PRIOR OPINION** |
| **Defendant-Appellant.** | ) | **DATED OCTOBER 26, 2012, IS** |
| | ) | **HEREBY WITHDRAWN.** |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. G. Richard Bevan, District Judge.

Judgment of conviction for aggravated driving under the influence and leaving the scene of an injury accident, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Robert Cassidy Hansen appeals from his judgment of conviction for aggravated driving under the influence of alcohol and leaving the scene of an injury accident.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Hansen was charged with aggravated driving under the influence (DUI), Idaho Code § 18-8006, and leaving the scene of an injury accident, I.C. § 18-8007, after he struck and injured a motorcyclist while driving intoxicated and then fled the accident scene.  He pled guilty to the charges pursuant to a plea agreement, which contained a provision addressing Hansen's appellate rights:

> By accepting this offer the defendant waives the right to:  (1) file a Rule 35 Motion (except as to an illegal sentence) and (2) appeal <u>any</u> issues in this case,

including all matters involving the plea or the sentencing and any rulings made by the court, including all suppression issues. However, the defendant may appeal the sentence if the Court exceeds the determinate portion of the State's sentencing recommendation of the "Jail/Prison terms" set forth above.

At the sentencing hearing, the district court allowed the victim's father to make a statement, over Hansen's objection. The State, per its agreement with Hansen, recommended he be sentenced to a unified term of fifteen years, with three years determinate, for the aggravated DUI conviction and a unified sentence of five years, with two years determinate, for the conviction of leaving the scene of an injury accident. The district court imposed the recommended sentence as to the aggravated DUI conviction, but imposed a unified sentence of five years, with three years determinate, for the conviction of leaving the scene of an injury accident. The court ordered the two sentences to run concurrently.

Hansen filed an Idaho Criminal Rule 35 motion, which the district court denied. Hansen now appeals.

## II.

## ANALYSIS

Hansen initially contends he may appeal both sentences despite the waiver contained in the plea agreement. Additionally, he argues the district court erred in allowing the victim's father to present an impact statement at sentencing because the father did not qualify as a "victim" pursuant to Idaho statute. He argues this error was not harmless. Hansen also contends the sentences imposed are excessive under any reasonable view of the facts.

**A.     Waiver**

Initially, Hansen contends his plea agreement does not preclude him from appealing *both* sentences since the district court exceeded the State's sentencing recommendation as to Hansen's conviction for leaving the scene of an injury accident. The State argues Hansen may appeal only from the sentence where the district court exceeded the recommended term.

A plea agreement is contractual in nature and must be measured by contract law standards. *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006). As it is a question of law, we exercise free review over interpretation of its terms. *Id*. Determining whether a plea agreement is ambiguous is a question of law; however, interpretation of an ambiguous term is a question of fact. *State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537 (2010); *State v. Allen*,

2

143 Idaho 267, 272, 141 P.3d 1136, 1141 (Ct. App. 2006). Ambiguities in a plea agreement are to be interpreted in favor of the defendant. *Peterson*, 148 Idaho at 596, 226 P.3d at 538. Focusing on the defendant's reasonable understanding also reflects the proper constitutional focus on what induced the defendant to plead guilty. *Id*.

The right of a criminal defendant to appeal matters relating to his conviction and/or sentence is a statutory right that may be waived. *See Cope*, 142 Idaho at 496, 129 P.3d at 1245; *State v. Murphy*, 125 Idaho 456, 457, 872 P.2d 719, 720 (1994). Where the waiver of the right to appeal is included as part of a plea agreement, we employ the same analysis we would in determining the validity of any plea of guilty. *Murphy*, 125 Idaho at 457, 872 P.2d at 720.

Hansen's argument on appeal is that although the district court imposed the recommended sentence as to his aggravated DUI conviction, he may nonetheless appeal this sentence because the district court exceeded the recommended determinate portion in sentencing him for the conviction of leaving the scene of an injury accident. The basis for his argument appears to be that the plain language of the plea agreement allows as much or, in the alternative, the agreement is ambiguous and should be interpreted in his favor. His contentions are not convincing. The agreement's language, that Hansen may appeal "the sentence if the Court exceeds the determinate portion of the State's sentencing recommendation of the 'Jail/Prison terms' set forth above," is not ambiguous. As indicated by the use of "the sentence" as opposed to "the *sentences*," the agreement clearly provides that Hansen may appeal an individual sentence should the determinate portion imposed exceed the State's individual recommendation as to that specific sentence (again, as referenced by "the determine portion" as opposed to "the determinate *portions*"). The plain language of the provision does not support any other reading. Accordingly, any claims raised in regard to Hansen's sentence for aggravated DUI are waived on appeal and will not be addressed by this Court.

**B.     Victim Impact Statement**

Hansen argues the district court erred in allowing the victim's father to make a statement at the sentencing hearing, over Hansen's objection, because the father did not qualify as a "victim" pursuant to Idaho Code § 19-5306 and did not otherwise qualify under the two situations identified by the statute allowing an immediate family member of a crime victim to provide a victim impact statement. Hansen further argues this error was not harmless.

The determination of whether a person is a victim under section 19-5306 is a factual determination that is reviewed for an abuse of discretion. *State v. Lampien*, 148 Idaho 367, 373, 223 P.3d 750, 756 (2009). The interpretation of section 19-5306 is a question of law over which we exercise free review. *Lampien*, 148 Idaho at 373-74, 223 P.3d at 756-57. The objective of statutory construction is to derive the intent of the legislature. *Id*. at 374, 223 P.3d at 757. Statutory construction begins with the literal language of the statute. *Id*. This Court gives effect to the purpose and intent of the legislature based on the language of the statute in its entirety and gives effect to every word. *Id*.

In relevant part, section 19-5306 provides, "Each victim of a criminal or juvenile offense shall be: . . . (e) Heard, upon request, at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration, placing on probation or release of the defendant unless manifest injustice would result . . . ." I.C. § 19-5306(1)(e). The statute defines "victim" as "an individual who suffers direct or threatened physical, financial or emotional harm as the result of the commission of a crime." I.C. § 19-5306(5)(a). In addition, it provides:

> The provisions of this section shall apply equally to the immediate families of homicide victims or immediate families of victims of such youthful age or incapacity as precludes them from exercising these rights personally. The court may designate a representative from the immediate family to exercise these rights on behalf of a deceased, incapacitated, or minor victim.

I.C. § 19-5306(3).

On appeal, Hansen contends the district court erred in allowing the victim's father to make a statement at sentencing because the father did not qualify as a "victim" pursuant to section 19-5306(5)(a), nor were circumstances present allowing for the involvement of immediate families pursuant to section 19-5306(3). The State contends that although section 19-5306 confers a right to "victims" to address the court, it is not a limiting statute and, therefore, is not the only mechanism whereby the court may accept such evidence at sentencing. The State argues that separate from section 19-5306, the district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing, including the statement at issue in this case. *See State v. Matteson*, 123 Idaho 622, 625, 851 P.2d 336, 339 (1993).

The Idaho Supreme Court's interpretation of section 19-5306 in *State v. Payne*, 146 Idaho 548, 199 P.3d 123 (2008) makes clear that the State's interpretation of the statute in this case is incorrect, as the Court found the statute does, in fact, limit the parties allowed to submit

4

victim impact statements at sentencing. Payne, having been convicted of first degree murder, kidnapping, robbery and rape and sentenced to death, argued, among other things, that his trial counsel was deficient by failing to limit the victim impact statements presented at sentencing to those of immediate family members pursuant to section 19-5306. The Supreme Court first noted that a reading of the entire statute makes clear the legislature intended to limit the definition of "victim" by providing that a victim must have suffered direct harm as a result of the commission of the crime. *Payne*, 146 Idaho at 575, 199 P.3d at 150 (citing I.C. § 19-5306(5)(a)). Additionally, the Court noted that in cases of homicide the statute extends the right to make a statement *only* to immediate family members. *Id.* (citing I.C. § 19-5306(3)). "When read together," the Court surmised, "the meaning is clear: the legislature intended to limit the right to be heard to only immediate family members." *Id.* The court then concluded, "As such, the victim impact statements given by those who were not [the decedent's] immediate family members *were not admissible*." *Id.* (emphasis added). Thus, although the State is correct that section 19-5306 contains no express language disallowing impact-of-the-crime information from persons other than victims, our Supreme Court appears to have interpreted it as including such a prohibition. In *Payne*, the Court did not merely hold that persons not specified in the statute lacked a *right* to be heard; it held that their statements were "not admissible."

In light of the *Payne* decision, we are constrained to hold that section 19-5306 renders inadmissible statements by nonvictims that describe the impact of a nonhomicide crime.[1] Here, it is uncontroverted that the father did not qualify as a victim pursuant to the statute, and therefore, allowing him to make an impact statement at sentencing was in error. However, *Payne* also makes clear that a court's inquiry does not end with the determination that inadmissible evidence was presented. Rather, improper admission of victim impact statements is reviewed for harmless error. *Payne*, 146 Idaho at 574, 199 P.3d at 147. To hold an error harmless, the Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility such evidence complained of contributed to the sentence imposed. *Id.*

---

[1] Of course, Idaho Code § 19-5306 does not preclude family members or friends of the victim from providing information at sentencing that is relevant for purposes other than describing victim impact. For example, such individuals may have information about the defendant's prior conduct or about the past relationship between the defendant and the victim that would be relevant at sentencing. Here, however, the father's statement was offered only as a victim impact statement.

Generally, Idaho appellate courts have presumed sentencing judges are able to sort out truly relevant, admissible evidence presented in the form of victim impact statements. *Id. See also State v. Lovelace*, 140 Idaho 73, 81, 90 P.3d 298, 306 (2004) (distinguishing cases where a judge imposes the sentence from the case in Lovelace where the impact statements were presented to a jury); *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991) (holding the victim impact statement contained in the presentence investigation report, advocating the death penalty, did not violate Card's Eighth Amendment rights because the Court was satisfied beyond a reasonable doubt that the sentencing judge imposed the death penalty based on the evidence and without regard to the opinion in the victim impact statement); *State v. Deisz*, 145 Idaho 826, 832, 186 P.3d 682, 688 (Ct. App. 2008) (holding that where the district court ruled the statement was admissible only as victim input and then set forth multiple reasons for Deisz's sentence based on the proper sentencing factors, there was no error). However, as Hansen points out, in *Payne* the Court held the admission of the improper victim impact statements before the sentencing judge was not harmless, noting the inflammatory nature of the evidence received and the district court's ruling allowing the evidence to be presented, which indicated the court was not aware the evidence was not properly before the court. *Payne*, 146 Idaho at 574-75, 199 P.3d at 149-50. Hansen argues the same factors were present in this case, pointing out the district court specifically "noted" Hansen's objection that the father's testimony was not properly before the court pursuant to section 19-5306, but ultimately allowed the father "to address the court in that capacity." In addition, Hansen characterizes the father's statements as "highly inflammatory," noting that at several points during the statement the father focused his remarks on the personal characteristics of Hansen and his character, referring to Hansen as a "cruel, . . . selfish coward" and asserting that Hansen had been out "celebrating his crimes by using drugs and accumulating more charges." Additionally, the father characterized Hansen as having "anti-social personality disorder" and as "dangerous and unfixable." The father stated Hansen had "no likelihood of rehabilitation," characterized Hansen's life as one "entirely committed to criminal behavior" rather than contributing anything to society, and asked the court to enforce the "maximum sentences" for each conviction and that they "be served consecutively." In view of these "repeated inflammatory remarks," Hansen contends it cannot be said beyond a reasonable doubt the father's statement did not impact the sentencing determination of the district court.

6

Although portions of the father's statement are certainly strongly worded, we have carefully reviewed the entire record and are satisfied beyond a reasonable doubt the sentencing judge imposed the sentence for leaving the scene of an injury accident based on the evidence and without regard to the opinions of the father. This case is readily distinguishable from *Payne* where there were an "excessive" number of letters from the deceased's family members and friends attached to the presentence investigation report, many of which stated the author's opinions about Payne, his character, and the crime. *Payne*, 146 Idaho at 573, 199 P.3d at 148. Additionally, in *Payne*, numerous family members and friends testified at the sentencing hearing and gave their opinions about Payne, his character, and the crime. During the *full day* of victim impact testimony, witnesses described Payne as "evil, a waste of aspirin, a sociopath, a cold-blooded killer, unremorseful, a predator, cold and calculating, not a man, not even human, selfish, a coward, a pathetic monster, a wimp and a man without a conscience." *Id.* at 573, 199 P.3d at 148. Witnesses, many outside the deceased's immediate family, also expressed their wishes that Payne "'rot in hell,' 'burn in hell' or be tortured." *Id.* at 573-74, 199 P.3d at 148-49. One witness noted Bible passages he wished the court to consider; each passage called for death for a certain crime. The Court surmised, "Considering the *nature and high volume* of the victim impact statements, even in light of the presumption, the statements by the district court show there is reasonable doubt as to whether the inadmissible evidence contributed to Payne's sentence." *Id.* at 574, 199 P.3d at 149 (emphasis added).

By contrast in this case, only one improper statement was presented at sentencing and the nature of the statement was significantly milder. In addition, although the father requested the "maximum sentences" be imposed for each crime and that they be served consecutively, the district court imposed only three years (of a possible five years) determinate for the conviction of leaving the scene of an injury accident and ordered it be served concurrently with the sentence imposed for the aggravated DUI conviction. Further, the district court clearly set forth its rationale behind the sentence imposed, which did not include reliance on the father's statement: the fact Hansen was given numerous opportunities for rehabilitation, but had ignored the chances until very recently; that Hansen had committed more than just a DUI, but caused serious injury and fled the accident scene; and that a determinate period of incarceration, long enough to effect rehabilitation, was required for the safety of the community. Accordingly, we are satisfied beyond a reasonable doubt the sentencing judge imposed the sentence for leaving the scene of an

injury accident in this case based on the evidence and without reliance on the improperly presented statement of the father.

## C.     Sentence Review

Hansen contends the sentences imposed by the district court were excessive. However, as we indicated above, we will only examine the sentence imposed upon his conviction for leaving the scene of an injury accident, which was a unified term of five years, with three years determinate.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Hansen contends the sentence was excessive in light of his "strong rehabilitative potential," as shown by his willingness to accept responsibility for his actions giving rise to his criminal convictions, evidence he had been actively pursuing his rehabilitation through participation in religious programs while incarcerated, the fact his struggles with alcohol and resulting criminal behavior stem from a difficult childhood, and the letters of support he presented to the district court. Hansen's argument is unavailing. The district court indicated it took Hansen's youth, troubled background and addictions into consideration, but also noted Hansen had an extensive criminal history and was previously given several chances for rehabilitation that he had not taken advantage of. The court also noted the seriousness of the

8

crime given the severe injuries Hansen caused. The court specifically took into consideration the objectives of sentencing and concluded that at least three years of determinate incarceration was required in order to give Hansen a chance to be rehabilitated and for the safety of society. We note the determinate portion of the sentence was only one year longer than what Hansen agreed the State would recommend and the determinate portion imposed for the aggravated DUI conviction, which was to be served concurrently, did not exceed the State's recommendation; nor was the sentence nearly as long as the maximum five years determinate that could have been imposed. Hansen has failed to show the sentence is excessively harsh.

## III.

## CONCLUSION

Given the clear terms of the plea agreement, Hansen may appeal only the sentence imposed for leaving the scene of an injury accident because the district court exceeded the State's sentencing recommendation only in regard to this conviction. Although the district court erred in allowing the victim's father to present a statement at sentencing, we conclude this error was harmless. Finally, we conclude Hansen has not shown the sentence imposed upon his conviction for leaving the scene of an injury accident was excessive. Accordingly, we affirm Hansen's judgment of conviction for aggravated DUI and leaving the scene of an injury accident.

Chief Judge GRATTON and Judge LANSING **CONCUR.**